UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PATRICIA JANCATERINO,

Plaintiff,

v.

ENCOMPASS                  HEALTH
REHABILITATION  HOSPITAL  OF  LAS
VEGAS, LLC.,

Defendants.

Case No. 2:25-cv-00157-ART-DJA

ORDER

Plaintiff Patricia Jancaterino sued Defendant Encompass Health Rehabilitation Hospital of Las Vegas, LLC ("Encompass Health"), for violations of state and federal law that occurred pursuant to her employment with Encompass Health as a nurse manager. (ECF No. 10.) Before the Court is Encompass Health's partial motion to dismiss Ms. Jancaterino's First Amended Complaint ("FAC"). (ECF No. 11.) As detailed below, the Court grants in part and denies in part Encompass Health's motion to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

The Court adopts the following allegations from the FAC. In December 2019, Ms. Jancaterino was hired as a clinical liaison by Encompass Health. (ECF No. 10 at ¶ 7.) Ms. Jancaterino received a positive letter commending her work ethic and performance and was subsequently promoted to nurse manager. (*Id.* at ¶ 8.) According to Ms. Jancaterino, she excelled in the role and received positive feedback, until Melanie Yogaratnam became her supervisor. (*Id.*)

On February 28, 2024, Ms. Jancaterino slipped and fell on an unmarked wet floor during her work shift, resulting in a fractured hand. (*Id.* at ¶ 9.) That same day, Ms. Jancaterino filed a worker's compensation claim relating to her workplace injury. (*Id.*) Because of her fractured wrist, Ms. Jancaterino was instructed to refrain from lifting things with her right hand and had to wear a

1

wrist splint. (*Id.* at ¶ 11.)

In response, Ms. Yogaratnam began to harass Ms. Jancaterino based on her disability. (*Id.*) Ms. Yogaratnam made repeated comments about Ms. Jancaterino's disability, which included heightened scrutiny of her fingernails. (*Id.* at ¶ 12.) Ms. Yogaratnam made these comments despite knowing that Ms. Jancaterino's injury made reversing her fingernail style exceptionally difficult and painful. (*Id.*) Ms. Jancaterino complained to Human Resources, but states that nothing came of her complaint. (*Id.* at ¶ 13.)

After her complaint, according to Ms. Jancaterino, the harassment worsened. (*Id.* at ¶ 14.) When Ms. Jancaterino was unable to apply hand sanitizer to her hands upon entering and exiting a patient's room, Ms. Yogaratnam yelled at her to leave the room. (*Id.*) Ms. Yogaratnam also repeatedly asked Ms. Jancaterino to lift objects that she could not lift because of her wrist injury. (*Id.* at ¶ 15.) When Ms. Jancaterino informed Ms. Yogaratnam that she was unable to lift the objects because of her injury, Ms. Yogaratnam told her that her inability to do so would reflect poorly in her upcoming performance evaluation. (*Id.*) During one of these occasions, Ms. Yogaratnam criticized Ms. Jancaterino for being unable to perform certain tasks due to her wrist injury and said that she would "remember it." (*Id.*)

On March 23, 2024, Ms. Jancaterino received a call from Encompass Health's CEO, who informed her that she would be suspended because she made harassment complaints. (*Id.* at ¶ 16.) Five days later, Ms. Jancaterino was terminated. (*Id.* at ¶ 17.)

On November 20, 2024, Ms. Jancaterino dual filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Nevada Equal Rights Commission ("NERC"). (*Id.* at ¶ 18.) EEOC subsequently closed her case without making findings and issued Ms. Jancaterino an immediate right to sue notice. (*Id.*)

Ms. Jancaterino filed the instant case on January 24, 2025. (ECF No. 1.) Encompass Health moved to dismiss (ECF No. 9), and Ms. Jancaterino filed the FAC, alleging the following causes of action: (1) tortious discharge, (2) negligent supervision and retention, (3) workplace discrimination in violation of NRS 613.330 *et seq.*, (4) workplace discrimination in violation of 42 U.S.C. § 12112 *et seq.*, (5) workplace harassment in violation of NRS 613.330 *et seq.*, (6) workplace harassment in violation of 42 U.S.C. § 12112 *et seq.*, (7) workplace retaliation in violation of NRS 613.340 *et seq.*, (8) retaliation in violation of 42 U.S.C. § 12203 *et seq.*, (9) failure to provide reasonable accommodation in violation of 42 U.S.C. § 12112(b)(5), and (10) intentional infliction of emotional distress. (ECF No. 10.) Encompass Health then again moved to dismiss. (ECF No. 11.) Ms. Jancaterino responded (ECF No. 18), and Encompass Health replied. (ECF No. 19.)

## II.      LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pleaded complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require "detailed factual allegations," it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To sufficiently allege a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* Similarly, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Iqbal,* 556 U.S. at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court

discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* (quoting *Iqbal,* 556 U.S. at 678).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). In accordance with Rule 15(a), the court should freely give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.      DISCUSSION

In support of its partial motion to dismiss, Encompass Health argues that (1) Ms. Jancaterino's fifth and sixth claims for harassment are insufficiently pled and (2) the negligent supervision and retention and intentional infliction of emotional distress claims are barred by an adequate statutory remedy, or, in the alternative, insufficiently pled. (ECF No. 11.) The Court addresses each argument in turn.

### A. Harassment Claims

Ms. Jancaterino's fifth and sixth claims allege workplace harassment in violation of NRS 613.330 and 42 U.S.C. § 12112. (ECF No. 10 at ¶¶ 58–81.) Encompass Health argues that these claims are alleged without any factual basis and so must be dismissed as insufficiently pled. (ECF No. 11 at 4–5.)

To state a claim for disability-based harassment/hostile work environment

under the Americans with Disabilities Act ("ADA"),[1] a plaintiff must allege (1) that she was "subjected to harassment because of [her] disability," and (2) "that the harassing conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Mattioda v. Nelson*, 98 F.4th 1164, 1174 (9th Cir. 2024) (internal quotations and citation omitted). The first prong requires a plaintiff to allege a "plausible causal nexus between the claimed harassment and [her] disabilities." *Id.* at 1175.

To satisfy the second prong, a plaintiff must allege that the conduct was "subjectively and objectively abusive." *Id.* at 1176. Under this prong, the "required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* (quoting *E.E.O.C. v. Nat'l Educ. Ass'n, Alaska*, 422 F.3d 840, 847 (9th Cir. 2005)). "[A]ll the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance inform whether an environment is sufficiently hostile." *Id.* at 1176 (internal quotations and citations omitted).

Ms. Jancaterino has adequately alleged workplace harassment in violation of 42 U.S.C. § 12112 and NRS 613.330. First, Ms. Jancaterino's allegations

---

[1] Both parties contend that Ms. Jancaterino's workplace harassment claim under NRS 613.330 should be analyzed under the ADA standard. (ECF Nos. 11 at 4 n.4; 18 at 6 n.1.) The Court agrees. The Supreme Court of Nevada has held that "[i]n light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases." *Pope v. Motel 6,* 114 P.3d 277, 280 (2005) (applying federal ADA analysis to a discrimination claim brought under Nevada law). Federal courts have subsequently applied the same standard for ADA claims as they do for NRS 613.330 claims. *See Ulloa v. Nevada Gold Mines,* No. 3:21-CV-00495-RCJ-CSD, 2024 WL 728696, at *6 n.8 (D. Nev. Feb. 22, 2024); *Shufelt v. Just Brakes Corp.*, No. 2:16-CV-01028-GMN-CWH, 2017 WL 379429, at *3 (D. Nev. Jan. 25, 2017). The Court therefore does not need to separately discuss or resolve the ADA and NRS 613.330 claims.

clearly link Ms. Yogaratnam's harassment with her wrist injury. According to the complaint, Ms. Yogaratnam only began to harass Ms. Jancaterino after she sustained a wrist fracture. (ECF No. 10 at ¶ 11–12.) Ms. Yogaratnam's harassment was also directly related to her injury, with Ms. Yogaratnam specifically telling Ms. Jancaterino that her inability to lift objects "would reflect poorly in her upcoming performance evaluation." (*Id.* at ¶ 15.)

Second, while these comments may have been "mere offensive utterance[s]," the frequency of the harassment by a direct supervisor renders it subjectively and objectively abusive. *Mattioda*, 98 F.4th 1174–76. Ms. Jancaterino alleged that Ms. Yogaratnam made repeated offensive comments about her disability. (ECF No. 10 at ¶¶ 10–15.) These included repeated comments about her fingernails, yelling at Ms. Jancaterino to leave a room when her injury made it impossible to sanitize her hands, repeatedly asking her to lift objects that her injury restricted her from lifting, telling her that her inability to lift objects would reflect poorly on her upcoming performance evaluation, and stating that Ms. Yogaratnam would "remember" that Ms. Jancaterino could not perform certain tasks. (*Id.*) This frequent and consistent harassment was made more severe by the fact that Ms. Yogaratnam was Ms. Jancaterino's direct supervisor. *See Mattioda*, 98 F.4th 1176 (finding that "[s]upervisor harassment has 'potentially greater impact' than coworker harassment" (quoting *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 445 (9th Cir. 2017)). And while the abusive conduct may not have continued for years, it is clear from her complaint that the conduct only ended because Ms. Jancaterino was terminated from her position. (ECF No. 10 at ¶ 15–17.)

Because Ms. Jancaterino has adequately alleged being subjected to pervasive harassment because of her disability, the Court finds that Ms. Jancaterino has sufficiently stated claims for workplace harassment in violation of 42 U.S.C. § 12112 and NRS 613.330 for the motion to dismiss stage.

**B. Negligent Supervision and Retention/Intentional Infliction of Emotional Distress**

Ms. Jancaterino's second and tenth claims allege negligent supervision retention and intentional infliction of emotion distress ("IIED"), respectively. (ECF No. 10 at ¶ 32–38, 112–19.) Encompass Health argues that Ms. Jancaterino's tort claims for negligent supervision and retention and IIED are barred by the existence of an adequate statutory remedy—the ADA and NRS 613.330–613.340. (ECF No. 11 at 5–7.)

The Court agrees with Encompass Health. "The Nevada Supreme Court has consistently found that NRS 613.330 preempts common law claims premised on employment discrimination." *Levy v. Mandalay Corp.*, No. 2:14-CV-01636-GMN, 2015 WL 3629633, at *3 (D. Nev. June 10, 2015) (citing *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989) ("the Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (1991) ("no additional court-created remedies ... arise out of age-based wrongful discharge for which tort recovery is available by statute.")).

This Court has also found that statutory remedies for race, gender, and religious discrimination under NRS 613.330 precluded negligent training and supervision and IIED claims where plaintiff alleged the same illegal employment practices underlying the plaintiff's discrimination claims. *See, e.g., Levy*, 2015 WL 3629633, at *4 ("Plaintiff may not bring an additional common law tort claim for negligent hiring, supervision, and training because [NRS 613.330] precludes an additional remedy for illegal employment practices."); *Schaefer v. Diamond Resorts Int'l Mktg., Inc.*, No. 2:14-CV-01900-GMN, 2015 WL 1932196, at *7 (D. Nev. Apr. 28, 2015) (finding plaintiff's IIED claim preempted by NRS 613.330 where it was based on the same alleged illegal employment practices underlying

her sex discrimination claims"); *Williams v. Aria Resort & Casino*, LLC, No. 2:17-CV-1484-JCM-VCF, 2019 WL 2716765, at *9 (D. Nev. June 28, 2019) ("Because the factual basis for [Plaintiff's] negligent supervision claim stems from the same allegations that support her Title VII discrimination claims, the court finds that this claim is preempted by [NRS 613.330]."); *Evans v. Valley Elec. Ass'n, Inc.*, No. 2:20-CV-000986-ART-VCF, 2023 WL 184124, at *15 (D. Nev. Jan. 13, 2023) ("Because the facts underlying [Plaintiff's] negligent hiring claim are the same as those underlying her employment discrimination claims, this Court finds that [Plaintiff's] negligent hiring allegations are "clearly intended to be remedied by the statutory framework" and do not give rise to separate common law tort claims." (citations omitted)).

As relevant to this case, NRS 613.330 prohibits discrimination based on disability and provides a statutory remedy for that illegal employment practice. Accordingly, Ms. Jancaterino may not assert additional common law tort claims for negligent supervision and retention and IIED based on the same alleged conduct as her employment discrimination claims.

At this juncture, Ms. Jancaterino has not alleged facts supporting her negligent supervision and retention claims that are distinct from the allegations underlying her disability discrimination claims. However, it is unclear whether Ms. Jancaterino could amend her complaint to allege a basis for her negligent supervision and retention and IIED claims that is not precluded by statute. As a result, the Court will dismiss Ms. Jancaterino's second and tenth claims without prejudice to give her the opportunity to sufficiently plead adequate grounds.

**IV.      CONCLUSION**

IT IS THEREFORE ORDERED that Encompass Health's partial motion to dismiss (ECF No. 11) is GRANTED IN PART and DENIED IN PART consistent with this Order.

DATED THIS 10th day of March 2026.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE